UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| HEATHER REESE, o/b/o J.R., | ) No. ED CV 11-00149-VBK |
| Plaintiff, | ) MEMORANDUM OPINION<br>) AND ORDER |
| v. | ) <br>) (Social Security Case) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security, | ) <br>) <br>) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

          considered the consultative examiner's opinion;

2. Whether the ALJ properly assessed Plaintiff's residual functional capacity;

3. Whether the ALJ posed incomplete hypothetical questions to the vocational expert; and

4. Whether the ALJ's Step Five determination that Plaintiff is capable of performing the jobs of bench assembler and inspector/hand packager is supported by substantial evidence.

(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE ALJ DID NOT PROPERLY CONSIDER THE PSYCHOLOGICAL CONSULTATIVE EXAMINER'S OPINION REGARDING THE EFFECTS OF PLAINTIFF'S HUNTINGTON'S DISEASE**

This matter originally proceeded to an administrative hearing before the ALJ on August 28, 2007. (AR 375-400.) At that hearing, which occurred after the death of Jason Reese, testimony was taken from Dr. Laudau, a medical expert ("ME"), in addition to testimony from a vocational expert ("VE"), and from Heather Reese, Jason Reese's daughter. Heather Reese testified that in the two-year period prior to Jason Reese's death, which occurred on February 19, 2007 (AR 404), she observed that he had problems with physical activities, such as

getting in and out of his truck; with gripping and handling things (he would drop things "all the time"); and with fatigue. (AR 389-390.) Significantly, she testified that he had problems concentrating. For example, he had historically braided his daughter's hair, but could no longer focus enough to do it any more. He could no longer sit and concentrate enough to read a book or work on a computer. Heather Reese indicated that she observed these events in the latter part of 2005. (AR 390-391.)

In the first decision in this matter issued by the ALJ on September 21, 2007 (AR 10-18), the credibility of Heather Reese's observations was depreciated as being not supported by the "mild objective findings." (AR 14.) The ALJ made reference to a normal neurological examination on June 28, 2004; and another neurological consultative examination ("CE") on September 30, 2005, in addition to an internal medicine CE which was conducted on June 17, 2006. (AR 14-15.) The ALJ relied upon these examinations to support his conclusion that Jason Reese's physical abilities and concentration were not as impaired as Heather Reese's testimony indicated. Reliance was also placed on the ME, who testified that Jason Reese's condition worsened toward the end of 2006. (AR 15-16.) Little attention was focused on a CE conducted by clinical psychologist Dr. Riahinejad on September 27, 2005. (AR 322-326.) Although the testifying ME likely reviewed Dr. Riahinejad's report (see AR at 378), he made no mention of it in his testimony at the first administrative hearing. (See AR at 378-388.)

In the ALJ's first decision, he found that Jason Reese had severe impairments, including Huntington's Disease. (AR 12.) The ALJ acknowledged that Jason Reese had been found to carry the Huntington's

1  Disease mutation gene in October 2004. (AR 14.)  At the first hearing,
2  the ME described Huntington's Disease as "a congenital degenerative
3  disease of the brain, ..." (AR 386.)  As to its symptomology, part of
4  the ME's testimony included the following: "And you develop dementia
5  movements and eventually you lose the ability to move ...  And it's a
6  gradual deterioration of the mind and the body." (AR 387.)

7  The ALJ's unfavorable decision, which was upheld by the Appeals
8  Council (AR 2-4), resulted in a lawsuit being filed in the District
9  Court, which was assigned to the undersigned (see United States
10 District Court, Central District of California, Case No. CV 09-340-
11 VBK).  The parties entered into a Stipulation to Voluntary Remand
12 pursuant to Sentence 4 of 42 U.S.C. § 305(g).  The Stipulation
13 provided, in part, the following:

> "Upon remand, the Administrative Law Judge (ALJ) will
> be directed to reconsider the lay witness evidence from
> Plaintiff's daughter.  If the ALJ rejects Plaintiff's
> daughter's opinion, the ALJ shall provide reasons germane to
> that witness for doing so.  The ALJ shall take any further
> action necessary to complete the administrative record."

(AR 414-415.)

Thereafter, the Appeals Council issued an Order remanding the case to the ALJ, with the following instructions:

> "The decision addressed the lay witness testimony;
> however, it did not provide the reasons the Administrative
> Law Judge rejected the lay witness evidence submitted from
> the claimant's daughter that was favorable to the claimant
> (Tr. 10, 377, 389-390).  The claimant passed away prior to

    the hearing.  The claimant's daughter testified that the claimant had problems with walking, gripping, handling, climbing stairs, concentration, and depression as far back as 2005.  The Administrative Law Judge's residual functional capacity assessment addressed some of the claimant's physical limitations; however, it did not include the mental limitations expressed by the daughter's testimony such as the claimant's problems with concentration and depression.  Accordingly, further evaluation of the law witness evidence is necessary.

    Upon remand, the Administrative Law Judge will reconsider the law witness evidence from the claimant's daughter and provide reasons germane to that witness if rejecting the opinion and take any further action necessary to complete the administrative record."

(AR 420-421.)

Following this remand order by the Appeals Council, a second hearing was held on July 28, 2010 before the same ALJ. (AR 448-453.) Heather Reese appeared, and was represented by counsel. No additional testimony was taken from Ms. Reese, and the ALJ indicated that, "What's required is further testimony from the vocational expert about how memory problems might impact in the jobs that were identified." (AR 450.)  The ALJ then posed a hypothetical to the VE which included no limitations as to concentration or related mental factors. (AR 451.)  What was added to the hypothetical was that "the individual would be limited to simple, repetitive tasks." (Id.)  The VE indicated that this hypothetical would not change the jobs previously

identified. (AR 452.)  The hearing then ended.

On September 14, 2010, the ALJ issued another unfavorable decision. (AR 404-414.)  Noting that Ms. Reese did not testify at the second hearing, the ALJ summarized her testimony at the first hearing, including that she noticed that Jason Reese was having difficulty with depression and concentration in late 2005. (AR 408.)  Again, however, reiterating the other medical and neurological evidence which he had discussed in his first decision (AR 408), and the testimony of the ME at that prior hearing, the ALJ essentially rejected Ms. Reese's testimony.  The following constitutes his discussion:

> "With regard to the daughter's testimony that the claimant was depressed and had poor concentration, there is no evidence that such would preclude the performance of simple, repetitive tasks.  There is no longitudinal history of a psychiatric impairment, or repeated hospitalizations, or of prolonged outpatient treatment.  The claimant neither required nor received extensive psychiatric treatment and useed no psychotropic medications.  The claimant underwent a psychological consultative examination on September 27, 2005.  Concentration and attention span were fair as was memory.  At the neurological examination in 2004, memory was good.  At the neurological consultative examination in September 2005, attention and concentration were not impaired.

(AR 409-410, Exhibit references omitted).

The Appeals Council denied review, and this lawsuit ensued.  For the reasons to be discussed, the Court reverses the decision of the

ALJ, and remands the matter for further hearing.

Although, consistent with the prior stipulation of the parties and this Court's Order and Judgment, the Appeals Council ordered that the ALJ reevaluate Heather Reese's testimony with regard to Jason Reese's difficulties with concentration and similar matters, what occurred, essentially, was simply another rejection of Heather Reese's testimony, based on the same evidence which had been taken at the first hearing.  Again, no substantial discussion was devoted to the examination and report of the psychological CE, Dr. Riahinejad.[1]

It would appear that if, indeed, the ALJ implicitly rejected Dr. Riahinejad's findings, it was because of his stated reliance on the fact that Jason Reese had no history of psychiatric treatment or repeated hospitalizations, or any prolonged outpatient treatment. This theme appears to be reiterated by the Commissioner in his portion of the JS, where he argues that there is no evidence in the record that "Plaintiff ever complained of psychological symptoms, or ever sought psychological treatment." (JS at 6, with citations.)  The Commissioner indicates that, "The only evidence of mental impairment is the report of the psychological consultative examiner." (Id.)  The Commissioner continues by noting that, "As the ALJ pointed out, there is no evidence that Plaintiff sought out any psychological treatment" (JS at 7, citations omitted), and finally, the Commissioner notes that "Dr. Riahinejad did not diagnose any actual psychological condition." (Id., citation to record omitted.)

Thus, the foundation upon which the ALJ appears to have rejected

---

[1]    In any event, the ALJ's characterization of Dr. Riahinejad's findings, as reflecting fair concentration and attention span inaccurately interprets that report. (See, infra.)

1   Heather Reese's testimony appears to be that Huntington's Disease has
2   symptoms which manifest themselves only in physical or neurological
3   ways.  But, as noted, the testimony of the ME at the first hearing was
4   that this disease represents "a gradual deterioration of the mind and
5   the body." (AR 387.)  Indeed, as set forth in A.D.A.M. Medical
6   Encyclopedia, it appears to be the case that Huntington's Disease,
7   also known as Huntington's Chorea, may be accompanied by dementia
8   which may include the following symptoms: disorientation or confusion;
9   loss of judgment; loss of memory; personality changes; and speech
10  changes.  Dr. Riahinejad specifically found that although Jason Reese
11  "is able to understand and remember complex instructions, his ability
12  to carry out such instructions seems to be impaired, due to the
13  complications of his Huntington's Disease. He also has significant
14  difficulty with persistence."  Even as to simple instructions, Dr.
15  Riahinejad found that Jason Reese could understand, remember, and
16  carry them out "with difficulty." Certainly, the testimony of Heather
17  Reese at the first hearing consistently supported such observations,
18  which Heather Reese first noticed at the beginning of 2005.  The ALJ's
19  finding (AR 407) that Jason Reese is capable of performing simple,
20  repetitive tasks in a full-time workday and workweek is suspect, if
21  credence is accorded to the observations of Heather Reese and the
22  functional findings of the 2005 psychological CE.  The rejection by
23  the ALJ of these opinions and observations appears to be based on a
24  misapprehension that psychological symptoms from Huntington's Disease
25  either do not exist, or must be corroborated by psychological
26  treatment.  Yet, as the ME testified, there is no treatment for
27  Huntington's Disease.  Consequently, the underpinning of the ALJ's
28  decision which relies on these concepts is faulty and unsustainable.

1 Certainly, in the accepted parlance which governs evaluation of
2 examining opinions in Social Security cases, the ALJ failed to provide
3 specific and legitimate reasons supported by substantial evidence in
4 the record. See <u>Lester v. Chater</u>, 81 F.3d 821, 830-831, 834 (9th Cir.
5 1995); <u>Regennitter v. Commissioner</u>, 166 F.3d 1294, 1299 (9th Cir.
6 1999).
7  These defects in the ALJ's decision necessitate remand for
8 further consideration. The remaining issues need not be discussed in
9 any detail, because the error as to the first issue affects these
10 issues. Thus, as to the second issue, whether the ALJ properly
11 assessed Plaintiff's residual functional capacity, the ALJ's
12 conclusions, again, were based upon rejection of Dr. Riahinejad's and
13 Heather Reese's testimony. The third issue, as to whether the ALJ
14 posed an incomplete hypothetical question to the VE, is materially
15 affected by the Court's conclusions as to the first issue, since the
16 hypothetical question did not include any limitations as to
17 Plaintiff's ability to concentrate, or other mental manifestations of
18 Huntington's disease as reflected in Dr. Riahinejad's report, and in
19 Heather Reese's observations. Finally, the fourth issue, whether the
20 ALJ erred at Step Five in finding that Jason Reese was capable of
21 performing his past relevant work, will require reevaluation based
22 upon the Court's finding and conclusions as to the error concerning
23 the first issue.
24 //
25 //
26 //
27 //
28 //

Based upon the foregoing, the Court reverses the ALJ's decision, and remands this matter for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: October 17, 2011                    /s/
                                    VICTOR B. KENTON
                                    UNITED STATES MAGISTRATE JUDGE